**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **COAST PROFESSIONAL, INC.,** ) | |
| **NATIONAL RECOVERIES, INC.,** ) | |
| **ENTERPRISE RECOVERY SYSTEMS, INC., and** ) | |
| **PIONEER CREDIT RECOVERY, INC.,** ) | |
| ) | |
| **Plaintiffs,** ) | **BID PROTEST** |
| ) | |
| **v.** ) | **No. 15-207C** |
| ) | |
| ) | **(Judge Wheeler)** |
| **THE UNITED STATES,** ) | |
| ) | |
| **Defendant,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **FINANCIAL MANAGEMENT SYSTEMS, INC.,** ) | |
| **ACCOUNT CONTROL TECHNOLOGY, INC.,** ) | |
| **CONTINENTAL SERVICE GROUP, INC.,** ) | |
| **WINDHAM PROFESSIONALS, INC., and** ) | |
| **GC SERVICES LIMITED PARTNERSHIP,** ) | |
| ) | |
| **Defendant-Intervenors.** ) | |

**<u>DEFENDANT'S RENEWED MOTION TO DISMISS</u>**

CHAD A. READLER
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

PATRICIA M. McCARTHY
Assistant Director

OF COUNSEL:

JOSE OTERO
SARA FALK
Attorneys
United States Department of Education
400 Maryland Avenue, SW
Washington, D.C. 20044

MICHAEL D. SNYDER
JANA MOSES
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20202
Telephone: (202) 616-0842
Facsimile (202) 305-7643

January 30, 2018

Attorneys for Defendant

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

STATEMENT OF THE FACTS AND PROCEDURAL BACKGROUND ................................ 2

ARGUMENT ........................................................................................................ 5

    I.    Plaintiffs' Primary Claims Should Be Dismissed As Moot .................................... 6

        A.   This Court Lacks Jurisdiction To Consider Moot Claims.............................. 6

        B.     Education's Corrective Action Has Mooted Plaintiffs' Primary Claims ..... 7

        C.   Coast's And NRI's Primary Claims Are Moot, Regardless Of The
            Contractual  Provision Precluding Coast And NRI From Having
            Multiple Contracts With Education Simulltaneously .................................... 9

    II.   Plaintiffs' Remaining Claims Should Be Dismissed For Failure To State
       A Claim Upon Which Relief May Be Granted ...................................................... 12

        A.   Standard For Rule 12(b)(6) Of The RCFC.................................................... 12

        B.   Plaintiffs' Claims For Costs and Attorneys Fees Are Not Claims Upon
            Which  Relief May Be Granted .................................................................... 13

CONCLUSION.................................................................................................... 15

i

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Anderson v. United States*,
    344 F.3d 1343 (Fed. Cir. 2003) ................................................................ 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................ 12

*Bannum, Inc. v. United States*,
    56 Fed. Cl. 453 (2003) ................................................................ 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................ 12

*Beta Analytics Int'l, Inc. v. United States*,
    75 Fed. Cl. 155 (2007) ................................................................ 13

*Brickwood Contractors, Inc. v. United States*,
    288 F.3d 1371 (Fed. Cir. 2002) ................................................................ 14

*Buckhannon Bd. & Care Home v. West Virginia Dep't of Health & Human,Servs.*,
    532 U.S. 598 (2001) ................................................................ 14

*CCL Serv. Corp. v. United States*,
    43 Fed. Cl. 680 (1999) ................................................................ 8

*Chapman Law Firm Co. v. Greenleaf Constr. Co.*,
    490 F.3d 934 (Fed. Cir. 2007) ................................................................ 7, 11, 14, 15,

*Cnty of L.A. v. Davis*,
    440 U.S. 625 (1979) ................................................................ 7, 11

*Coast Prof'l, Inc. v. United States*,
    828 F.3d 1349 (Fed. Cir. 2016) ................................................................ 4

*Consumers Power Co. v. Dep't of Energy*,
    894 F.2d 1571 (Fed. Cir. 1990) ................................................................ 14

*Continental Svc. Grp. v. United States*, No. 17-2155 et al.,
    2018 WL 388634 (Fed. Cir. Jan. 12, 2018) ................................................................ 2, 12

*Corp., Northrol Elecs. Sys. Div. v. United States*,
    27 Fed. Cl. 795 (1993) ................................................................ 6

*CW Gov't Travel, Inc. v. United States*,
    46 Fed. Cl. 554 (2000) ................................................................................................ 6

*Dalton v. Sherwood Van Lines, Inc.*,
    50 F.3d 1014 (Fed. Cir. 1995) ............................................................................... 8, 11

*De Funis v. Odegaard*,
    416 U.S. 312 (1974) ..................................................................................................... 6

*Figueroa v. United States*,
    57 Fed. Cl. 488 (2003) ............................................................................................... 12

*Godwin v. United States*,
    338 F.3d 1374 (Fed. Cir. 2003) ......................................................................... 12, 13

*Gov't Technical Servs., LLC v. United States*,
    90 Fed. Cl. 522 (2009) ........................................................................................... 8, 11

*Griffin Broadband Communs., Inc. v. United States*,
    79 Fed. Cl. 320 (2007) ............................................................................................... 12

*Innovative Res. v. United States*,
    63 Fed. Cl. 287 (2004) ............................................................................................... 10

*KWR Constr., Inc. v. United States*,
    124 Fed. Cl. 345 (2015) ............................................................................................. 14

*McAbee Constr. Inc. v. United States*,
    97 F.3d 1431 (Fed. Cir. 1996) ................................................................................. 10

*N.C. v. Rice*,
    404 U.S. 244 (1971) ..................................................................................................... 6

*Powell v. McCormack*,
    395 U.S. 486 (1969) ..................................................................................................... 7

*Rice Servs., Ltd. v. United States*,
    405 F.3d 1017 (Fed. Cir. 2005) ............................................................................... 14

*Sargisson v. United States*,
    913 F.2d 918 (Fed. Cir. 1990) ................................................................................. 15

*Schooling v. United States*,
    63 Fed. Cl. 204 (2004) ................................................................................................. 6

*White Buffalo Constr., Inc. v. United States*,
  101 Fed. Cl. 1 (2011) ................................................................................................... 14

*Zevalkink v. Brown*,
  102 F.3d 1236 (Fed. Cir. 1996)...................................................................................... 7

**Statutes**

12 U.S.C. § 5536............................................................................................................. 4

15 U.S.C. § 631 ............................................................................................................. 10

15 U.S.C. § 1692 ............................................................................................................. 3

28 U.S.C. § 1491 ............................................................................................................. 6

28 U.S.C. § 2412 ........................................................................................................... 16

41 U.S.C. §§ 7101-09 ...................................................................................................... 8

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **COAST PROFESSIONAL, INC.,** ) | |
| **NATIONAL RECOVERIES, INC.,** ) | |
| **ENTERPRISE RECOVERY SYSTEMS, INC., and** ) | |
| **PIONEER CREDIT RECOVERY, INC.,** ) | |
| ) | |
| **Plaintiffs,** ) | **BID PROTEST** |
| ) | |
| **v.** ) | **No. 15-207C** |
| ) | |
| ) | **(Judge Wheeler)** |
| **THE UNITED STATES,** ) | |
| ) | |
| **Defendant,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **FINANCIAL MANAGEMENT SYSTEMS, INC.,** ) | |
| **ACCOUNT CONTROL TECHNOLOGY, INC.,** ) | |
| **CONTINENTAL SERVICE GROUP, INC.,** ) | |
| **WINDHAM PROFESSIONALS, INC., and** ) | |
| **GC SERVICES LIMITED PARTNERSHIP,** ) | |
| ) | |
| **Defendant-Intervenors.** ) | |

## DEFENDANT'S RENEWED MOTION TO DISMISS

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of this Court (RCFC), defendant,
the United States, respectfully requests that this Court dismiss the amended complaints filed by
plaintiffs, Coast Professional, Inc. (Coast), National Recoveries, Inc. (NRI), Enterprise
Recoveries Systems, Inc. (ERS), and Pioneer Credit Recovery, Inc. (Pioneer) (collectively,
plaintiffs). Dk. Nos. 198, 200, 203, 206.[1]

---

[1] In 2016, ERS changed its name to Alltran. *See*
http://alltran.com/2016/09/01/ersbecomesalltran/. For the sake of consistency with prior filings
in this matter, we refer to this company as ERS in this filing.

In light of the corrective action taken by the Department of Education (Education), plaintiffs' primary claims—alleging errors by Education in its issuance of award-term extensions (ATEs)—are moot.  The contracting officer has reevaluated the four plaintiffs as candidates for ATEs, and Pioneer and ERS have both been issued ATEs.  Relatedly, in accordance with the terms of Coast's and NRI's pre-existing small business set-aside contracts (awarded in 2014), Coast and NRI were given the choice to continue performance under their respective small business set-aside contracts or to instead receive an ATE, and both companies chose to continue working under their prior set-aside contracts.

We previously filed a motion to dismiss this case in February 2017, when we initially announced Education's decision to take corrective action.  Dk. No. 213.  In an order issued on April 5, 2017, the Court "temporarily denied" that motion "pending the . . . corrective action," and the Court stayed this case until June 7, 2017.  Dk. No. 228 (docket entry states that motion was "temporarily denied").[2]  The corrective action was completed on April 28, 2017, when Education had completed the corrective action reevaluation and announced the results (*see* Dk. No. 231), and plaintiffs' primary claims continue to be moot.  In addition, to the extent plaintiffs have also raised claims for bid and proposal costs and attorney fees that are not rendered moot by Education's corrective action, these claims should be dismissed pursuant to Rule 12(b)(6) because plaintiffs have failed to state a claim upon which relief may be granted.

---

[2] In the April 5 order, the Court also scheduled a status conference for June 7, 2017.  Dk No. 228.  That status conference was cancelled by the Court after the injunction was issued in *Continental Svc. Grp. v. United States*, Fed. Cl. No. 17-449.  The injunction was recently partially stayed from the bench and then partially reversed in a written opinion by the Court of Appeals for the Federal Circuit.  *See Continental Svc. Grp. v. United States*, No. 17-2155 *et al.*, 2018 WL 388634 (Fed. Cir. Jan. 12, 2018).

STATEMENT OF THE FACTS AND PROCEDURAL BACKGROUND

In May 2008, Education issued a Request for Quotes under Solicitation ED-08-R-0052 for collection and administrative resolution services concerning defaulted student loans.  With that solicitation, it had planned to issue task orders to private collection agencies (PCAs) under existing General Services Administration Financial and Business Services schedule contracts.

In or about April 2009, Education selected 22 PCAs and issued 22 task orders.  The terms and conditions of all 22 task orders from 2009 are virtually identical.  Under clause H.4 of the task orders, Education had the discretion to issue ATEs to PCAs that met certain threshold performance standards.  AR Tab 4a, at 173-74.[3]  Thus, the 2009 task orders incorporated the specific quantitative performance metrics outlined in Education's Competitive Performance Continuous Surveillance (CPCS) system.  AR Tab 4a, at 174 (clause H.5).[4]  An average CPCS score of 85 or more for a prescribed period of performance made a contractor eligible for consideration for an ATE pursuant to clause H.4 of the task orders, as amended.  Each of the four plaintiffs exceeded that score.

In December 2014, Education's Federal Student Aid (FSA) began conducting focused reviews of all 22 PCAs to determine whether, and at what frequency, the PCAs may have provided misinformation to borrowers in violation of consumer protection laws, specifically the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, and the Dodd-Frank Wall Street Reform

---

[3]  "AR __" refers to pages in the corrected administrative record that the Government filed on March 12, 2015.

[4]  Clause H.4 was modified in all task orders in 2011.  AR Tab 5, at 469.  The only change was a modification to the minimum performance rating required to be eligible for an ATE.  *Id.*

and Consumer Protection Act, 12 U.S.C. § 5536.  AR Tab 36 at 1078.  As part of the focused

review, FSA calculated an error rate for each PCA by tallying the number of calls containing at

least one violation.  AR Tabs 12-34.

On February 20, 2015, after considering the results of the focused review and consulting

with other Education officials, the contracting officer notified each plaintiff by telephone that it

would not receive an ATE task order due to an unacceptably high rate of consumer protection

law violations, despite its CPCS score.  *Id*.  On March 3, 2015, the contracting officer sent each

plaintiff an email memorializing the information that she had provided during the calls.

AR 1139-47.

In March 2015, each plaintiff filed a separate action in this Court, which the Court

subsequently consolidated into the current action.  The PCAs that were awarded extensions

intervened as defendants.  Following briefing and oral argument, the trial court dismissed the

cases, finding that it lacked jurisdiction.  Dk. No. 148.  Plaintiffs ERS and Pioneer each filed an

appeal in the United States Court of Appeals for the Federal Circuit.

In July 2016, the Federal Circuit vacated the trial court's judgment and remanded the

matter.  The Federal Circuit held that Education's decisions to grant ATEs to some of the PCAs,

but not others, gave rise to bid protest jurisdiction under 28 U.S.C. § 1491(b).  *Coast Prof'l, Inc.*

*v. United States*, 828 F.3d 1349, 1356-57 (Fed. Cir. 2016).  On remand, plaintiffs filed amended

complaints, motions for judgment on the administrative record, and motions to supplement the

administrative record.  Dk. Nos. 198, 200, 203, 206.  In their complaints, plaintiffs generally

argued that Education had unreasonably relied upon the results of the 2015 focused review, and

that Education's decision not to award ATEs to plaintiffs was arbitrary, capricious, and not in

accordance with law.  Thereafter, Education decided to take corrective action.  *See* Dk. No. 213

4

at Exhibit A (Declaration of Patty Queen Harper, the contracting officer, dated Feb. 22, 2017 (hereinafter, Feb. 22 Harper Decl.)).  The primary component of the corrective action was to reevaluate the plaintiffs for ATEs without considering the 2015 focused review as part of the reevaluation.  *See* Feb. 22 Harper Decl. ¶ 5.

On April 28, 2017, we informed the Court that Education had completed the corrective action reevaluation.  Dk. No. 231.  Specifically, we explained that Education had "issued award-term-extension task orders to ERS and Pioneer, and ha[d] provided Coast and NRI with the choice to continue performing under their respective set-aside contracts, or instead to receive an award-term-extension task order as a result of the corrective action," and that while Coast and NRI each "opted to continue to perform under their respective set-aside contract, . . . both firms also simultaneously objected to being forced to choose." *Id.*[5]

ARGUMENT

In their prayers for relief, plaintiffs make similar requests, differing to some extent from plaintiff to plaintiff.  *See* Coast Amended Compl. at 9; ERS Amended Compl. at 17; NRI Amended Compl. at 35; Pioneer Amended Compl. at 22-23 (Prayers for Relief).  The plaintiffs' prayers for relief, when considered together, request:  (1) an award of an ATE in accordance with clause H.4 of the 2009 task orders; (2) a finding that the 2015 focused review and the subsequent decision not to issue plaintiffs extensions were arbitrary and capricious; and (3) an award of bid

---

[5]  As addressed in prior briefing, both Coast's and NRI's current set-aside contracts include a provision (clause C.3.43(1), entitled Organizational Limit on Contracts) stating that "No organization, including any affiliate, division or parent of the organization, may receive or hold more than one prime contract for default collection services with FSA." Dk. No. 222 at 16; *see also* Dk. No. 222-1 ¶ 12 and Ex. A (supplemental declaration of contracting officer, appending the excerpt of the set-aside contract that includes this provision).  This contractual provision requires that NRI and Coast each must choose between their current set-aside contract and receiving an award-term-extension task order.  *See* Dk. No. 222 at 16.  This issue is addressed further below.

and proposal costs, as well as attorney fees. *See id*. Although each plaintiff's prayer for relief is distinct (for example, only ERS and Pioneer include requests for attorney fees), these three components essentially comprise the plaintiffs' prayers for relief.

As we explain below, the first two components of plaintiffs' claims for relief—for an award of an ATE, and for a finding that the 2015 focused review and subsequent decision not to issue plaintiffs extensions were arbitrary and capricious—are rendered moot by Education's corrective action (we refer to these two components of plaintiffs' claims as their primary claims). As we further explain below, the balance of plaintiffs' claims should be dismissed for failure to state a claim upon which relief may be granted.

I.      Plaintiffs' Primary Claims Should Be Dismissed As Moot

The Court should dismiss plaintiffs' primary claims because they are moot as a result of Education's corrective action.

A.      This Court Lacks Jurisdiction To Consider Moot Claims

It is well-established that justiciability, including mootness, is a question of subject-matter jurisdiction. *CW Gov't Travel, Inc. v. United States*, 46 Fed. Cl. 554, 556 (2000) (citing *N.C. v. Rice*, 404 U.S. 244, 246 (1971)). "The mootness doctrine originates from the 'case or controversy' requirement of Article III of the United States Constitution." *Northrop. Corp., Northrol Elecs. Sys. Div. v. United States*, 27 Fed. Cl. 795, 800 n.4 (1993) (citing *De Funis v. Odegaard*, 416 U.S. 312, 316 (1974)). Although the jurisdiction of this Court, as an Article I court is not limited by the "case or controversy" requirement of Article III, this Court and other Article I courts have adopted many justiciability precepts based upon prudential grounds. *See, e.g.*, *Schooling v. United States*, 63 Fed. Cl. 204, 209 (2004) (dismissing case for lack of subject-matter jurisdiction because claims asserted in the complaint were moot); *CW Gov't Travel*,

6

46 Fed. Cl. at 558 (citing *Zevalkink v. Brown*, 102 F.3d 1236, 1243 (Fed. Cir. 1996)) (granting

motion to dismiss for mootness); *see also Anderson v. United States*, 344 F.3d 1343, 1350 n.1

(Fed. Cir. 2003) ("The Court of Federal Claims, though an Article I court . . . applies the same

standing requirements enforced by other federal courts created under Article III.").

The Supreme Court has stated that "a case is moot when the issues presented are no

longer 'live' or the parties lack a legally cognizable interest in the outcome." *Cnty of L.A. v.

Davis*, 440 U.S. 625, 631 (1979) (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).

"[J]urisdiction, properly acquired, may abate if the case becomes moot because:  (1) it can be

said with assurance that 'there is no reasonable expectation . . .' that the alleged violation will

recur . . . , and (2) interim relief or events have completely and irrevocably eradicated the effects

of the alleged violation." *Davis*, 440 U.S. at 631 (citations omitted).

B.      Education's Corrective Action Has Mooted Plaintiffs' Primary Claims

Pursuant to Education's corrective action, Education reevaluated every plaintiff in

accordance with the terms of the 2009 task orders, including clause H.4, as if Education had not

previously declined to issue the plaintiffs ATEs.  Importantly, the alleged prejudicial aspect of

the initial evaluation—the results of the 2015 focused review—was not considered as part of the

reevaluation.  *See* Feb. 22 Harper Decl. ¶ 5.  As a result of the corrective action, each plaintiff

was offered an ATE, *see* Dk. No. 231, satisfying plaintiffs' claims for an ATE award and

rendering moot plaintiffs' request for a finding that the 2015 focused review and subsequent

decision not to issue plaintiffs extensions were arbitrary and capricious.  *See Davis* 440 U.S. at

631; *Chapman Law Firm Co. v. Greenleaf Constr. Co.*, 490 F.3d 934, 940 (Fed. Cir. 2007)

("When, during the course of litigation, it develops that the relief sought has been granted or that

the questions originally in controversy between the parties are no longer at issue, the case should

generally be dismissed.").  In sum, plaintiffs' primary claims are no longer live and should be dismissed.[6]

To the extent plaintiffs continue to maintain that they are entitled to a certain threshold amount of debt-collection work, such arguments are contract administration matters that are not properly before this Court in this bid protest.  Section 1491(b)(2) of the Tucker Act requires that monetary relief in a bid protest be limited to bid preparation and proposal costs.  28 U.S.C. § 1491(b)(2) (This Court "may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs.").  At bottom, any dispute regarding Education's administration of how much debt-collection work a PCA receives cannot be addressed in this case and falls under the Contract Disputes Act, 41 U.S.C. §§ 7101-09.  *See Dalton v. Sherwood Van Lines, Inc.*, 50 F.3d 1014, 1017 (Fed. Cir. 1995) ("When the [CDA] applies, it provides the exclusive mechanism for dispute resolution; the [CDA] was not designed to serve as an alternative administrative remedy, available at the contractor's option."); *Gov't Technical Servs., LLC v. United States*, 90 Fed. Cl. 522, 527 (2009) ("[T]he Federal Circuit has made it crystal clear" that matters of contract administration are beyond this court's bid protest jurisdiction.).

---

[6] To the extent plaintiffs have requested that the Court should "award" them each an ATE—*see* ERS Am. Compl. at 17; Pioneer Am. Compl. at 22-23—such claims should also be dismissed on the independent basis that this Court does not have the authority to award a contract to a party.  *See Innovative Res. v. United States*, 63 Fed. Cl. 287, 290 n.5 (2004) (The Court is "without power to award a contract.") (citation omitted); *CCL Serv. Corp. v. United States*, 43 Fed. Cl. 680, 683 (1999) ("[D]eference [is] to be given to the agency and the court [is] without power to award the contract.") (citation omitted).  Moreover, both ERS and Pioneer now have ATEs.

C.     Coast's And NRI's Primary Claims Are Moot, Regardless
       Of The Contractual Provision Precluding Coast And NRI
       From Having Multiple Contracts With Education Simultaneously

While both Coast and NRI have contended that they should be entitled to receive work under their set-aside contracts issued in 2014 while also receiving work under an ATE, *see* Dk. 233, the explicit terms of their respective set-aside contracts preclude this.  Both Coast's and NRI's current set-aside contracts include a provision (clause C.3.43(1), entitled Organizational Limit on Contracts) stating that "No organization, including any affiliate, division or parent of the organization, may receive or hold more than one prime contract for default collection services with FSA."  *See* Dk. No. 222 at 16 (Def's reply in support of mot. to dismiss); *see also* Dk. No. 222-1 ¶ 12 and Ex. A (supplemental declaration of contracting officer, dated March 22, 2017, appending the excerpt of the set-aside contract that includes this provision).  Thus, the Organizational Limit on Contracts provision required that NRI and Coast choose between maintaining their current set-aside contract and receiving an ATE, and both chose their set-aside contracts while noting their objection to being made to choose.  *See* Dk. No. 231.

On May 8, 2017, approximately 10 days after Coast and NRI had opted not to enter into an ATE and to continue performance under their respective set-aside contract, Coast and NRI filed a joint motion to lift the stay the Court had issued in this case as well as a motion to supplement the administrative record.  *See* Dk. No. 232-33.  In their joint motion to lift the stay, Coast and NRI argued that Education had "snuck" the Organizational Limit on Contracts provision "into a [bilateral] modification" of their respective contracts in October 2015. Dk. No. 232 at 7-8; *see also* Dk. No. 222-1 ¶ 12 and Ex. A (March 22 Harper decl. discussing and appending the excerpt of the bilateral modification containing the operative provision).

The language of the Organizational Limit on Contracts is clear, and Coast and NRI have not argued that the provision—stating that "[n]o organization, including any affiliate, division or parent of the organization, may receive or hold more than one prime contract for default collection services with FSA"—is vague or ambiguous.  Dk. No. 222-1 at Ex. A.  Moreover, this was a bilateral modification, and Coast and NRI each assented to the provision and executed the modification without objection.  Dk. No. 222-1 ¶ 12 and Ex. A.  Accordingly, both Coast and NRI are bound by the provision.  *See McAbee Constr. Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996) (When contract "provisions are clear and unambiguous, they must be given their plain and ordinary meaning . . . .") (citations and internal quotations omitted).

More importantly, the premise of Coast's and NRI's position is speculative and baseless. They argue that they would receive more work if they could perform under an ATE while continuing to maintain their respective set-aside contracts.  *See* Dk. No. 219 at 7 (Coast response to initial motion to dismiss); Dk. No. 221 at 9 (NRI response to initial motion to dismiss).[7]  Yet, as the contracting officer explained in her March 22 declaration, Coast and NRI (along with the other small business contractors with set-aside contracts) "receive the amounts [of accounts] they are capable of handling," and both Coast and NRI have received significant account allocations under their respective set-aside contracts.  *See* Dk. No. 222-1 ¶¶ 8-9.[8]  Thus, even if Coast and

---

[7]  The 2014 set-aside contracts have a base period that expires in September 2019, as well as an option period that expires in September 2024.  Thus, if Coast and NRI could perform under two contracts at one time, the ATEs (which have a maximum of 24 months) would expire prior to the expiration of Coast's and NRI's respective set-aside contracts.

[8]  Education's approach of assigning small businesses the amount of accounts that they are capable of handling is consistent with the general Federal policy of promoting small businesses.  *See, e.g.*, 15 U.S.C. § 631 ("It is the declared policy of the Congress that the Government should aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns in order to preserve free competitive enterprise, to insure that a fair proportion of the total purchases and contracts or subcontracts for property and services for the Government

NRI could each have two contracts with Education at one time, Education is already assigning both parties the amount of accounts that Education determines they are capable of handling, and each having two contracts would not change this—which is consistent with the fact that the provision limiting Coast and NRI to one contract is labelled as an "organizational limit" (not an account limit).  Moreover, if either Coast or NRI has a dispute regarding the amount of accounts it has been assigned, such a dispute would be a contract administration matter that is not properly before this Court in this consolidated bid protest, as already explained above.  *See* 28 U.S.C. § 1491(b)(2) (limiting monetary relief in bid protests to bid and proposal costs); *see also, e.g.*, *Dalton*, 50 F.3d at 1017; *Gov't Technical Servs.*, 90 Fed. Cl. at 527.

At bottom, both Coast and NRI were reevaluated for an ATE as part of Education's corrective action, the alleged prejudicial aspect of the initial evaluation (the 2015 focused review) was not considered, and each party was ultimately offered an ATE.  *See* Feb. 22 Harper Decl. ¶ 5; *see also* Dk. No. 231.  Moreover, the contractual provision limiting Coast and NRI to one contract each does not affect the amount of accounts that are assigned to each party, and, as a general matter, if either Coast or NRI has a dispute regarding the amount of accounts it is being assigned, such a dispute is not within the jurisdiction of this Court to consider in this consolidated bid protest in any event, as explained above.  In sum, the "organizational limit" provision does not undermine the effectiveness of the corrective action in this case.  *See Davis*, 440 U.S. at 631; *Chapman*, 490 F.3d at 940.  Thus, Coast's and NRI's arguments regarding the provision (first raised in their joint motion to lift the stay[9]) should be rejected, the parties'

---

. . . be placed with small-business enterprises . . . to maintain and strengthen the overall economy of the Nation.").

[9]  The stay of this case ended on June 7, 2017 (Dk. No. 228), such that Coast's and NRI's joint motion to lift the stay has been overtaken by events.  Moreover, Coast's and NRI's motion

primary claims should be dismissed as moot, and the balance of the claims should be dismissed

pursuant to Rule 12(b)(6), as explained below.[10]

II.  **Plaintiffs' Remaining Claims Should Be Dismissed**
     **For Failure To State A Claim Upon Which Relief May Be Granted**

The Court should dismiss plaintiffs' remaining claims because plaintiffs have failed to

state a claim upon which relief may be granted.

A.  **Standard For Rule 12(b)(6) Of The RCFC**

Dismissal for failure to state a claim upon which relief may be granted is appropriate

when the plaintiff's alleged facts do not entitle it to a remedy.  *Godwin v. United States*, 338 F.3d

1374, 1377 (Fed. Cir. 2003).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss

does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)

(citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Griffin Broadband

Communs., Inc. v. United States*, 79 Fed. Cl. 320, 323 (2007).  "Legal conclusions, deductions,

or opinions couched as factual allegations are not given a presumption of truthfulness."

*Figueroa v. United States*, 57 Fed. Cl. 488, 497 (2003).  Relatedly, a claim should be dismissed

if the Court lacks the power to decide the matter and award relief, *i.e.*, if the basis for the claim

---

to lift the stay and related motion to supplement the administrative record should be dismissed as
moot, along with the primary claims in this case.

[10]  ERS also requests that Education be enjoined from assigning additional accounts to
intervenors under their ATEs.  ERS Am. Compl. at 17.  Intervenors' ATEs ended on April 21,
2017, such that this issue has been overtaken by events.  Indeed, ERS and Pioneer were already
assigned accounts under their respective ATEs.  Relatedly, Coast and NRI have recently been
assigned accounts under their set-aside contracts.  These account assignments occurred after the
injunction issued in *Continental Svc. Grp. v. United States*, Fed. Cl. Consolidated Nos. 17-449 *et
al.*, was partially stayed by the Federal Circuit on December 8, 2017.  *Continental Svc. Grp.*,
No. 17-2155, 2018 WL 388634 at *4-7.

presents a non-justiciable or non-reviewable issue.  *See Sargisson v. United States*, 913 F.2d 918 (Fed. Cir. 1990).

      B.      Plaintiffs' Claims For Costs and Attorneys
                    <u>Fees Are Not Claims Upon Which Relief May Be Granted</u>

Certain of the plaintiffs have requested bid and proposal costs, as well as recovery of attorney fees.  *See* Coast Am. Compl. at 9; ERS Am. Compl. at 17; Pioneer Am. Compl. at 22-23.  As explained below, any such claims should be dismissed for failure to state a claim upon which relief may be granted.

Regarding bid and proposal costs, all four plaintiffs were awarded and performed the underlying 2009 task orders, and none of the plaintiffs incurred any additional bid or proposal costs in connection with the ATEs.  No bid or proposal was ever required, requested, or submitted in connection with Education's initial evaluation or reevaluation of the plaintiffs for award of an ATE. Thus, none of the plaintiffs can be entitled to recover any such costs. Moreover, an agency "reevaluation restores to a [protestor] its substantial chance to receive the contract award," and such reevaluation "[t]ypically . . . eliminate[s] the basis for an award of bid and preparation and proposal costs, as the investment in the proposal is no longer a needless expense."  *Beta Analytics Int'l, Inc. v. United States*, 75 Fed. Cl. 155, 159 (2007) (quotation omitted); *see also Bannum, Inc. v. United States*, 56 Fed. Cl. 453, 462 (2003) (holding that assessment of "possible entitlement to bid preparation costs cannot be determined until the conclusion of the procurement process").  Accordingly, plaintiffs' claims for bid and proposal costs should be dismissed for failure to state a claim upon which relief may be granted, because they fail to state facts that could form the premise for such a claim.  *Godwin*, 338 F.3d at 1377; *see also Twombly*, 127 S. Ct. at 1964-65.

13

To the extent some of the plaintiffs have also requested attorney fees, the same result is appropriate, for similar reasons.  In the United States, under the "American Rule," "parties are ordinarily required to bear their own attorney fees—the prevailing party is not entitled to collect from the loser."  *Buckhannon Bd. & Care Home v. West Virginia Dep't of Health & Human Servs.*, 532 U.S. 598, 620 (2001).  Pursuant to the American Rule, a court may award fees to a prevailing party only by explicit statutory authority.  *Id.*  In suits against the United States, the prevailing party may not recover attorney fees absent a waiver of sovereign immunity.  *Consumers Power Co. v. Dep't of Energy*, 894 F.2d 1571, 1578 (Fed. Cir. 1990).

Once such waiver is the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA).  Pursuant to EAJA, the prevailing party must submit the necessary application under 28 U.S.C. § 2412(d)(1)(B) and establish that it meets the EAJA's requirements before the court can award fees or expenses.  *KWR Constr., Inc. v. United States*, 124 Fed. Cl. 345, 364 (2015).  Because the award of EAJA costs depends upon which party prevails in court, an EAJA petition that is filed prior to final judgment in a case is premature and should be dismissed without prejudice.  *See White Buffalo Constr., Inc. v. United States*, 101 Fed. Cl. 1, 23 (2011).

Moreover, when the Court dismisses a protest because the agency takes voluntary corrective action, the protestor is not "a prevailing party."  *Rice Servs., Ltd. v. United States*, 405 F.3d 1017, 1027 (Fed. Cir. 2005) (finding protestor was not a prevailing party when the trial court "entered its order because the government had voluntarily abandoned its position" and the trial court "did not state that it was entering the order as a merits adjudication in the face of a continuing controversy. . . ."); *Brickwood Contractors, Inc. v. United States*, 288 F.3d 1371, 1380 (Fed. Cir. 2002) (agency corrective action following court's preliminary comments about merits of protestor's TRO did not render protestor a prevailing party); *see also Chapman Law*

14

*Firm Co.*, 490 F.3d at 940 (trial court should not have entered judgment for plaintiffs, which arguably would have allowed plaintiff to claim prevailing party status, because "[t]he revised corrective action adequately addressed the effects of the challenged action, and the Court of Federal Claims had no reasonable expectation that the action would recur.  Accordingly, the Court of Federal Claims should have dismissed the case.").

In sum, because plaintiffs' claims for attorney fees are premature, and because Education's corrective action moots plaintiffs' primary claims, plaintiffs' claims for attorney fees should be dismissed for failure to state a claim upon which relief may be granted.

CONCLUSION

For these reasons, we respectfully request that the Court dismiss the plaintiffs' amended complaints.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td></td><td>CHAD A. READLER<br>Acting Assistant Attorney General</td></tr>
<tr><td></td><td>ROBERT E. KIRSCHMAN, Jr.<br>Director</td></tr>
<tr><td></td><td>s/ Patricia M. McCarthy<br>PATRICIA M. McCARTHY<br>Assistant Director</td></tr>
<tr><td>OF COUNSEL:</td><td>s/ Michael D. Snyder<br>MICHAEL D. SNYDER<br>JANA MOSES<br>Trial Attorneys</td></tr>
<tr><td>JOSE OTERO<br>SARA FALK<br>Attorneys<br>United States Department of Education<br>400 Maryland Avenue, SW<br>Washington, D.C. 20044</td><td>Commercial Litigation Branch<br>Civil Division<br>Department of Justice<br>P.O. Box 480, Ben Franklin Station<br>Washington, D.C. 20202<br>Telephone: (202) 616-0842<br>Facsimile (202) 305-7643</td></tr>
<tr><td>January 31, 2018</td><td>Attorneys for Defendant</td></tr>
</table>